IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENDAL HANDY, | ) |
| | ) |
| Plaintiff, | ) No. 22-cv-4809 |
| | ) |
| v. | ) Judge Jeffrey I. Cummings |
| | ) |
| OFFICER WEATHERSBY, OFFICER MASON, and OFFICER LONDON | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kendal Handy brings this lawsuit against defendant Chicago police officers Weathersby, Mason, and London alleging that they violated the Fourth Amendment on October 1, 2020 when Officer Weathersby used excessive force by violently twisting plaintiff's wrist while removing him from a parked car and, moments later, taking plaintiff down to the ground and punching him in the face five times while Officers Mason and London failed to intervene to stop him.[1]  The Officers bring a Rule 12(b)(6) motion to dismiss plaintiff's claims asserting that: (1) they are entitled to qualified immunity because Officer Weathersby used objectively reasonable force to arrest plaintiff; and (2) plaintiff, who pled guilty to a misdemeanor charge of resisting or obstructing a peace officer in connection with the October 1 incident, is barred from pursing his claims by collateral estoppel and the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Because there is a factual dispute as to whether the force used by Officer Weathersby was objectively reasonable and because plaintiff's misdemeanor conviction does not bar his civil claims, the Officers' motion to dismiss is denied.

---

[1] Plaintiff alleged several other claims in his complaint, but he has either voluntarily dismissed or abandoned them and is now pursuing only his excessive force and failure to intervene claims. (Dckt. #36 at 1).

1

I.     **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and the complaint must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Nonetheless, courts are permitted to consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (cleaned up).

While courts are typically limited to the four corners of the complaint at the motion to dismiss stage, *Ashcroft*, 556 U.S. at 674, the Officers have presented court records from plaintiff's state court criminal case along with video footage of the October 1, 2020 incident from their body-worn cameras in support of their motion to dismiss. Plaintiff asserts that the Court cannot consider these materials without converting the Officers' motion to dismiss into a motion for summary judgment. (Dckt. #36 at 8-9). The Court disagrees and finds that it is appropriate to consider these materials when determining the Officers' motion to dismiss.

To begin, the Seventh Circuit has made it clear that district courts can take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). "The most frequent use of judicial notice of ascertainable facts is in noticing the contents

of court records," (*id.*, at 1081 (cleaned up)), and "[t]his principle can extend to criminal plea agreements and transcripts of criminal court hearings." *Schwind v. Koste*, No. 19-CV-07412, 2020 WL 3035997, at *3 (N.D.Ill. June 4, 2020) (citing multiple cases). Accordingly, the Court will take judicial notice of the certified statement of conviction from plaintiff's criminal case, (Dckt. #24-1 (*People of the State of Illinois v. Kendal Handy*, 21CR0106901)), and the transcript of the March 9, 2023 proceedings from plaintiff's guilty plea to the misdemeanor charge, (Dckt. #24-2), that the Officers offer in support of their motion.

It is also well-settled that a court may consider extrinsic evidence (such as footage from a body-worn camera) on a motion to dismiss if the plaintiff refers to it in the complaint or if the evidence is central to his claims. *Esco v. City of Chicago*, 107 F.4th 673, 678-79 (7th Cir. 2024); *Bogie*, 705 F.3d at 609 (citing *Citadel Group Ltd. v. Wash. Regional. Med. Center*, 692 F.3d 580, 590-91 (7th Cir. 2012)). The Officers assert that it is appropriate for this Court to consider the footage from their body-worn cameras because plaintiff referenced it in his complaint. (Dckt. #24 at 4 (citing Dckt. #1, ¶46)). While it is true that plaintiff references "body camera footage" in his complaint, it is not clear whether this reference is to the Officers' body-worn camera footage or to the body-worn camera footage of Chicago police officers in general. (Dckt. #1, ¶46 ("The casual contempt that the Chicago Police Department has for minorities and witnesses, especially Black men, can be seen repeatedly, even on body camera footage that officers know is being recorded.")). Although the ambiguous nature of plaintiff's reference would ordinarily weigh against the court's consideration of the Officers' body-worn camera footage at this juncture,[2] plaintiff states that he "has no problem with the Court reviewing this evidence"

---

[2] *See Fullilove v. City of Chicago*, No. 24 C 2875, 2024 WL 4987400, at *3-4 (N.D.Ill. Dec. 5, 2024) (declining to consider body-worn camera footage where the specific footage in question was not referenced in the complaint).

because he believes that it supports his excessive force claim. (Dckt. #36 at 2). Accordingly, the Court will consider the Officers' body-worn camera footage in resolving this motion to dismiss.

## II. BACKGROUND

The facts below are drawn from the allegations in plaintiff's complaint, (Dckt. #1), the certified statement of conviction from plaintiff's criminal case, (Dckt. #24-1), and the transcript of the March 9, 2023 proceedings from plaintiff's guilty plea to the misdemeanor charge, (Dckt. #24-2).

At approximately 11:30 a.m. on October 1, 2020, plaintiff was in the passenger seat in a parked car near 5838 South Wabash Ave. in Chicago, Illinois and the owner of the car was in the driver's seat with the keys in her possession. (Dckt. #1 ¶¶6-8). Defendant Officer Mason came up to the car and asked to see plaintiff's identification and the car owner's paperwork. (*Id.* ¶10). Both plaintiff and the car owner cooperated and complied with Officer Mason's request. (*Id.* ¶¶11-13). Officer Mason returned plaintiff's identification card after running his information and the name check revealed no outstanding warrants for plaintiff and the car's owner. (*Id.* ¶¶13-15). As this was occurring, other Chicago police officers who appeared to be conducting a sweep handcuffed two other individuals who were removed from a car that was approximately fifteen feet away from the car plaintiff was sitting in. (*Id.* ¶¶16-17).

Defendant Officer Weathersby then approached the car on the passenger side where plaintiff was seated and opened the door without saying a word. (*Id.* ¶¶18-19). After he opened the door, Officer Weathersby, then said: "both of you just come on out, if I got to stand in the cold you got to stand in the cold too," and claimed that he could search the car because there was alcohol in the back seat. (*Id.* ¶¶20-21). In response, plaintiff told Officer Weathersby that the car was not running, that he and the individual in the driver's seat "were just sitting there," and

4

that it would be illegal to force him out of the car. (*Id.* ¶¶20-23). Officer Weathersby then stated: "I'm not going to tell you again get out of the fucking car," and then "violently grabbed" plaintiff's right wrist and "bent it with the purpose of inflicting pain." (*Id.* ¶¶24-25).

After plaintiff got out of the car, Officer Weathersby continued to inflict pain on him even though plaintiff pleaded with him to stop and had not physically resisted in any way at that point. (*Id.* ¶26). Defendant Officers Mason and London approached Officer Weathersby but did not intervene to stop his use of force and participated in plaintiff's detention. (*Id.* ¶27). Officer Weathersby yanked plaintiff away from the car while plaintiff complained about the pain and then pushed plaintiff against a nearby car and twisted his wrist even harder. (*Id.* ¶¶28-29). Plaintiff, who believed that his wrist was about to break, pushed Officer Weathersby, pulled away, and began to run. (*Id.* ¶30; Dckt. #36 (acknowledging that plaintiff could "be seen pushing away and running from Weathersby.")). Officer Weathersby "responded by taking [plaintiff] down to the ground and getting on top of him." (Dckt. #1 ¶31). Plaintiff did not fight back. (*Id.* ¶35). Despite this, Officer Weathersby "forcefully punched [plaintiff] five times in the face" while plaintiff's head was on the ground and plaintiff was not resisting. (*Id.* ¶¶32-33). The Officers then proceeded to search plaintiff, who was subsequently taken to the University of Chicago Hospital via ambulance. (*Id.* ¶¶34-35).

Plaintiff was arrested and later charged with resisting or obstructing a peace officer (felony), aggravated battery of a peace officer (felony), and two felony drug-related charges. (Dckt. #24-1 at 2). On March 9, 2023, plaintiff pled guilty to the resisting or obstructing a peace officer charge (which was amended from a felony to a misdemeanor) and the remaining charges were *nolle prossed* (dismissed). (Dckt. #24-1 at 9; Dkt. #24-2 at 8-9). At the March 9 hearing,

5

the parties stipulated that Officer Weathersby would testify as follows regarding the October 1, 2020 incident:

> He would testify he was employed as a Chicago Police Officer on October 2, 2020; that he was in full uniform on that date; that on October 1, 2020, [at] approximately 11:38 a.m. there was a traffic stop. The defendant was a passenger in the passenger's seat of that car. He would be identified in open court at the location of 5800 South Wabash Avenue in Chicago; that officers observed an open can of liquor in the vehicle and requested defendant to step outside the vehicle. The defendant attempted to run from the officers. As he was being handcuffed, he resisted by trying to prevent Officer Weathersby from handcuffing him and pushed [O]fficer Weathersby about the body.

(Dckt. #24-2 at 6).

### III. DISCUSSION

According to the Officers, plaintiff's excessive force and failure to intervene claims must be dismissed for the following reasons: (1) they are entitled to qualified immunity because the body-worn camera footages shows that Officer Weathersby used objectively reasonable force during his encounter with plaintiff; (2) the *Heck* doctrine and collateral estoppel bar plaintiff's excessive force claim; and (3) plaintiff's failure to intervene claim cannot survive absent a constitutional violation. (Dckt. #24 at 3-15). The Court disagrees on all scores.

    **A.**    **The Officers Are Not Entitled To Qualified Immunity At This Stage of the Proceedings.**

Government officials like the Officers are protected by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (cleaned up). "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established'

at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023) (cleaned up).

The right allegedly violated (here, the right to be free from excessive force) must be defined at the appropriate level of specificity. *Reed v. Palmer*, 906 F.3d 540, 547-48 (7th Cir. 2018). "The dispositive question is whether the violative nature of *particular* conduct is clearly established" and "the clearly established law must be particularized to the facts of the case." *Id.* at 548 (cleaned up). Thus, "[t]o overcome qualified immunity in an excessive-force case, the plaintiff must either (1) identify a closely analogous case that established a right to be free from the type of force the police officers used on him or (2) show that the forces was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Cibulka v. City of Madison*, 992 F.3d 633, 639 (7th Cir. 2021) (cleaned up).

"[D]ismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020), *quoting Behrens v. Pelletier*, 516 U.S. 299, 306 (1996). The familiar plausibility standard applies, i.e., "a plaintiff need not include every detail or fact related to the basis of h[is] allegations. Rather, []he only needs to include enough details about the subject-matter of the cases to present a story that holds together." *Reed*, 906 F.3d at 548 (cleaned up).

### 1. Plaintiff has sufficiently alleged that Officer Weathersby engaged in conduct that violated his clearly established constitutional rights.

The Court begins with an analysis of whether Officer Weathersby's conduct violated plaintiff's clearly established constitutional rights. "All claims that law enforcement officers have used excessive force should be analyzed under the Fourth Amendment and its

'reasonableness' standard." *Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

> An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest. A court must evaluate whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting that officer. The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. [I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (cleaned up).

Here, plaintiff alleges that he was sitting peaceably in the passenger's seat of a parked car when he was approached by Officer Mason, who requested to see his identification. After plaintiff complied with Officer Mason's request and Officer Mason determined that he had no outstanding warrants and returned his identification, Officer Weathersby approached and profanely demanded that plaintiff get out of the car—purportedly because there was alcohol in the back seat. After plaintiff refused to comply, Officer Weathersby:

- "violently grabbed [plaintiff's] right wrist and bent it with the purpose of inflicting pain;"

- "continued to inflict pain, even though [plaintiff] had not physically resisted in any way and complied when getting out of the vehicle;" and

- "yanked [plaintiff] away from the car" and "twisted his wrist even harder."

(Dckt. #1 ¶¶25-26, 28-29). After plaintiff, who believed that his wrist was about to break, pushed Officer Weathersby, pulled away, and began to run, Officer Weathersby:

- "[took plaintiff] down to the ground and g[ot] on top of him."

- "forcibly punched [plaintiff] five times in the face" while plaintiff's "head was on the ground and he was not resisting;" and

- inflicted injuries on plaintiff that required him to be taken to the hospital by ambulance.

8

*(Id.* ¶¶31, 33, 35).

In effect, plaintiff alleges that Officer Weathersby used excessive force on him at two distinct points during the October 1 incident. (Dckt. #36 at 11). The first use of force occurred when Officer Weathersby violently grabbed plaintiff's right wrist as he was seated in the car and twisted it. At this time, plaintiff posed no immediate threat to the Officers or to anyone else; he was not a risk of flight; it is unclear what, if any, crime he was suspected of engaging in;[3] and he was, at worst, engaged in passive resistance when he failed to follow Officer Weathersby's order to exit the car. *See, e.g., Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) (citing *Phillips v. Cmty Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012)) ("describing a willful refusal to obey a police officer's order as 'passive resistance'"); *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 730 (7th Cir. 2013) (plaintiff "at most exhibited passive noncompliance and not active resistance" when she did not comply with defendant officer's order to turn over).

It was clearly established at the time of the October 1 incident that using a significant level of force on a passively resisting individual constitutes excessive force. *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016); *Miller*, 761 F.3d at 829. It was also clearly established at the time "that '[a] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict *unnecessary* pain or injury, *if* that person presents little or no risk of flight or threat of injury.'" *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017), *quoting Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) (emphasis added in *Howell*); *Stainback v. Dixon*, 569 F.3d

---

[3] The parties stipulated in plaintiff's criminal case that Officer Weathersby would have testified to seeing an open can of liquor in the vehicle if plaintiff had proceeded with his criminal trial. Although plaintiff was in the passenger seat of the car, Illinois law provides that "no passenger may carry, possess or have any alcoholic liquor within any passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken." 625 ILCS 5/11-502(b). Even presuming this statute were applicable to plaintiff under the facts here, the violation "is a petty offense which can only be punished with a fine." *See People v. Rascher*, 585 N.E.2d 1153, 1156 (Ill.App.Ct. 1992).

9

767, 772 (7th Cir. 2009); *see also Raddant v. Douglas Cnty.*, No. 22-CV-555-JDP, 2024 WL 4188923, at *6 (W.D.Wis. Sept. 13, 2024) ("Painfully twisting a suspect's arm is not a de minimis use of force."). "[W]hether an officer knows that a given action unnecessarily will harm a particular individual will depend upon the circumstances of arrest. In some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself." *Stainback*, 569 F.3d at 772; *Brown v. City of Chicago*, 594 F.Supp.3d 1021, 1033 (N.D.Ill. 2022) ("The Question of whether a particular use of handcuffs offends the Fourth Amendment is . . . a highly fact-intensive one.").

In consideration of the relevant circumstances, plaintiff's allegation that Officer Weathersby forcefully and unnecessarily twisted his wrist while he was purportedly trying to handcuff him (Dckt. #39 at 4) is sufficient to allege a violation of his clearly established right not to be subjected to excessive force.

Plaintiff also challenges Officer Weathersby's use of force after Officer Weathersby tackled him to the ground. At this time, plaintiff alleges that he was down with his head on the ground and not resisting while Officer Weathersby punched him five times in the face with a closed fist. Closed fist strikes to the head "at the very least constitute[] significant force" given that "the head is a particularly fragile part of the human body" to which such strikes pose a "unique danger." *Lewis v. Caraballo*, 98 F.4th 521, 531-32 (4th Cir. 2024) (citing cases); *Sallenger v. Oakes*, 473 F.3d 731, 740 (7th Cir. 2007) (blow to the head delivered with a flashlight or closed fist "may constitute deadly force which is unreasonable unless the suspect threatens the officers with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm") (cleaned up); *Herring v. Village of New Lenox*, No. 06 C 2412, 2007 WL 2409740, at *4 (N.D.Ill. Aug. 20,

10

2007) ("Seventh Circuit caselaw indicates that a closed-fist blow to the head can constitute deadly force"). It was clearly established at the time that officers could not use significant force on a non-resisting (or passively resisting) suspect even where – as here – the suspect had previously resisted arrest. *Ferguson v. McDonough*, 13 F.4th 574, 583-84 (7th Cir. 2021); *Miller*, 761 F.3d at 829.

Thus, plaintiff has successfully alleged that Officer Weathersby has violated his clearly established right to be free from excessive force at this point of the incident as well, and the Officers are not entitled to qualified immunity as to this portion of plaintiff's claim. *See, e.g.*, *Pryor v. Corrigan*, No. 23-1463, 2024 WL 5197694 (7th Cir. Dec. 23, 2024). In *Pryor*, plaintiff claimed that defendant officer used excessive force when he tackled plaintiff to the ground and punched him twice (in the head, according to plaintiff) while handcuffing plaintiff. *Id.*, at *2-3. Although the Seventh Circuit affirmed the district court's decision to grant qualified immunity to the officer with respect to the tackle, it also affirmed the district court's decision to reject the officer's qualified immunity defense with respect to the punches and allow that portion of plaintiff's excessive force claim to proceed to trial. *Id.*, at *6-7 & n.4; *see also Bagley v. Kolb*, No. CV 19-10, 2021 WL 3376830, at *7 (W.D.La. Aug. 3, 2021) ("If a jury concludes that Bagley was merely passively resisting, Kolb's use of six strikes to the face was clearly excessive and unreasonable"); *Smith v. Bandi*, No. 17-CV-441-PP, 2018 WL 3349012, at *7 (E.D.Wis. July 9, 2018) ("If a jury were to believe the plaintiff's version of the events—namely, that the defendant repeatedly punched him in the face and neck with a closed fist and pepper sprayed him twice after he had stopped resisting—it could reasonably find that the defendant's use of force against the plaintiff after he was on the ground was excessive.").

11

>    2.  **The footage from the Officers' body-worn cameras does not utterly discredit plaintiff's allegations that he was subjected to excessive force.**

Notwithstanding plaintiff's allegations, the Officers assert that the footage from their body-worn cameras shows that Officer Weathersby used objectively reasonable force to arrest plaintiff. Plaintiff disagrees and asserts that the video footage actually supports his excessive force claims. On a motion to dismiss, this Court "may not defy the Supreme Court's command to accept all facts in the complaint as true, and instead rely on video evidence unless the video 'utterly discredit[s]' the non-movant's version of the facts such that there could be no reasonable disagreement about what the video depicts." *Esco*, 107 F.4th at 679, *quoting Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Officers attached four exhibits of body-worn camera footage in support of their motion. (Dckt. ##24-3, 24-4, 24-5, 24-6). The footage shows the perspective of different officers, including Officers Weathersby, Laster, and Sims, during plaintiff's arrest and the events relating to his excessive force claim. The parties have conflicting interpretations of the footage. The principal question is whether—as plaintiff asserts—the video footage supports plaintiff's allegations of excessive force. If it does, there would be no possibility that the footage from the body-worn cameras would "utterly discredit" plaintiff's allegations and plaintiff's allegations must be accepted as true. Upon the Court's review, it agrees with plaintiff that the video footage supports his excessive force claim.

In particular, the footage from Officer Weathersby's body-worn camera shows him approach the car where plaintiff was seated, demand that plaintiff exit the vehicle, and grab and bend plaintiff's wrist in an effort to handcuff him after plaintiff expressed his belief that Officer Weathersby's request was illegal. (Dckt. #24-4 at 9:25-9:50). Thereafter, plaintiff repeatedly exclaimed that he is in pain while Officer Weathersby led him by his wrist to stand by a

12

neighboring car. (*Id.* at 9:50-10:12). At this point in the footage, plaintiff and Officer Weathersby get into a physical altercation and the video footage subsequently cuts out for the remainder of the altercation, seemingly because the camera lens is blocked. (*Id.* at 10:12-10:40). Officer Weathersby is heard admitting to other officers that he hit plaintiff in his eye. (*Id.* at 13:54). Plaintiff is later seen on the ground, held down by a different officer and stating, "I pulled away" and "he [Officer Weathersby] hit me in the eye." (*Id.* at 13:56-14:00). Officer Weathersby's body-worn camera footage later shows that plaintiff's eye is swollen shut. (*Id.* at 17:05-17:10).

Officer Sims' body-worn camera footage also supports plaintiff's excessive force claim. Officer Sims' footage shows him interacting with another individual when he turns and moves towards plaintiff and Officer Weathersby. (Dckt. #24-6 at 11:40). His footage then shows plaintiff falling to the ground, Officer Weathersby stepping on either side of him, and then Officer Weathersby punching plaintiff at least five times around his face area. (*Id.* at 11:40-11:52). Plaintiff is curled in on himself—almost in a fetal position, while Officer Weathersby is punching him. (*Id.*) Officer Sims and Officer Weathersby then push plaintiff flat on the ground to handcuff him. (*Id.* at 11:52-12:10).

In sum: even if the above body-worn camera footage (or other footage) could be interpreted in a manner that is more supportive of Officer Weathersby, the Court is required to view it in the light most favorable to plaintiff. *Esco*, 107 F.4th at 679. Because the footage arguably supports—and does not "clearly and definitely discredit"—plaintiff's version of the facts, the Court cannot grant the Officers' motion to dismiss based on the video evidence. *Id.*

13

### B. Plaintiff's Excessive Force Claim is Not Barred by *Heck* Because it is Not Inconsistent with His Misdemeanor Conviction.

The Officers assert that plaintiff's excessive force claim is barred by the doctrine articulated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). "As a general proposition, a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not *per se Heck*-barred from maintaining a §1983 action for excessive force stemming from the same confrontation." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir 2006) (emphasis in original); *Hardwick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (same); *Hemphill v. Hopkins*, No. 08 C 157, 2011 WL 6155967, at *2 (N.D.Ill. Dec. 12, 2011) ("Settled precedent is clear: *Heck* does not bar an excessive force claim if the plaintiff, putting aside any challenge to his conviction, proceeds on the theory that the degree of force applied was unreasonable under the circumstances.").

Under *Heck*, only a claim that "necessarily" implies the "invalidity of a conviction" is barred. *Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008). To properly analyze *Heck*, a court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be dismissed until the plaintiff can show the conviction or sentence has been invalidated." *VanGilder v. Baker*, 435 F.3d 689, 691-92 (7th Cir. 2006). "The Seventh Circuit has repeatedly held excessive force claims containing this sequence of events—resistance to a lawful order followed by allegedly excessive force—are not *Heck*-barred." *Davis v. Duncan*, No. 20 CV 2409, 2022 WL 4483926, at *3 (S.D.Ind. Sept. 27, 2022).

Plaintiff pleaded guilty to a Class A Misdemeanor for resisting or obstructing a peace officer during the incident at issue here. (Dckt. #24-1). His plea was based on the factual basis that, if the case were to proceed to trial, Officer Weathersby would testify that plaintiff

14

"attempted to run from the officers" and "[a]s he was being handcuffed, he resisted by trying to prevent Officer Weathersby from handcuffing him and pushed officer Weathersby about the body." (Dckt. #24-2 at 6). The allegations of plaintiff's complaint are not inconsistent with the stipulated factual basis for plaintiff's guilty plea. To the contrary, plaintiff admits in his complaint that he "pull[ed] away" from Officer Weathersby, (Dckt. #1, ¶30), and he does not deny that he was resisting prior to when Officer Weathersby took him down to the ground.

Furthermore, as discussed above, plaintiff "has alleged two separate sequences of excessive force." (Dckt. #36 at 11). One related to Officer Weathersby's "immediate use of pain compliance when [plaintiff] was reluctant to leave the car" whereby Officer Weathersby grabbed and twisted plaintiff's wrist. (*Id.*). The second is related to Officer Weathersby "repeatedly punching" plaintiff when he was on the ground "neither struggling nor fighting back." (*Id.* at 11-12). Neither of these instances of excessive force is incompatible with the stipulated factual basis for plaintiff's guilty plea. Moreover, these allegations do not deny that plaintiff resisted or obstructed a peace officer, but rather allege that Officer Weathersby responded with unreasonable force at times that were temporally distinct from the events underlying plaintiff's misdemeanor conviction.

In sum: plaintiff's excessive force claim is not barred by *Heck*. Certainly, an officer is not permitted to use excessive force before the events underlying plaintiff's conviction have occurred. Furthermore, were this Court to uphold the application of *Heck* to the second instance of alleged excessive force, "it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGelder*, 435 F.3d at 692. This is not the law. *Id.*; *see also Gilbert v.*

15

*Cook*, 512 F.3d 899, 901 (7th Cir. 2008) ("*Heck* . . . do[es] not affect litigation about what happens after the crime is completed.").

### C. Plaintiff's Excessive Force Claim is Not Barred by Collateral Estoppel Because the Issues Are Not Identical.

Plaintiff's excessive force claim is not barred by collateral estoppel for similar reasons that it is not barred by *Heck*. When analyzing whether a Section 1983 claim is barred by a state court conviction, the district court applies the relevant state's rules for collateral estoppel—here, Illinois. *See Brown v. City of Chi.*, 599 F.3d 772, 774 (7th Cir. 2010). Collateral estoppel applies when "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." *Baz v. Patterson*, 689 F. Supp. 3d 602, 607 (N.D.Ill. 2023), *quoting Bajwa v. Metro Life Ins. Co.*, 804 N.E.2d 519, 532 (Ill. 2004). Collateral estoppel exists to prevent litigants from re-litigating issues "that have already been the subject of a fair legal determination." *Wilson v. Keske*, No. 9 CV 8063, 2010 WL 4065665, at *3 (N.D.Ill. Oct. 15, 2010).

Here, defendant officers assert that the issues presented in plaintiff's criminal proceeding, where he pleaded guilty to a misdemeanor for resisting/obstructing a peace officer, are identical to the issues presented in his Section 1983 excessive force claim. (Dckt. #24 at 11). Not so. Plaintiff's criminal proceeding and conviction focused on plaintiff's actions towards Officer Weathersby and whether he resisted or obstructed whereas plaintiff's excessive force claim focuses on Officer Weathersby's use of force on plaintiff and whether it objectively reasonable under the circumstances. *See Keske*, 2010 WL 4065665, at *4 ("The criminal case focused on [the plaintiff's] treatment of officer Keske. In contrast, the focus of the Section 1983 claims in

16

the instant proceeding is on [the officer's] treatment of [the plaintiff], and whether it was excessive under the circumstances."); *Schwind v. Koste*, No. 19-CV-07412, 2020 WL 3035997, at *4 (N.D.Ill. June 4, 2020) (same). Simply put, the question of whether Officer Weathersby used excessive force *before* and/or *after* plaintiff resisted was not decided by the state criminal court. *Hemphill v. Hopkins*, No. 08 C 157, 2011 WL 6155967, at *4 (N.D.Ill. Dec. 12, 2011). Accordingly, collateral estoppel does not apply to bar plaintiff's excessive force claim. *Id.*; *Schwind*, 2020 WL 3035997, at *4.

> D. **The Officers' Motion to Dismiss Plaintiff's Failure to Intervene Claim is Denied.**

Plaintiff asserts a failure to intervene count based on the allegation that "each Defendant Officer stood by without intervening to prevent the misconduct described in th[e] Complaint." (Dckt. #1 ¶85). In the Seventh Circuit:

> [a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). A "realistic opportunity to intervene" can exist if the officer(s) could have "called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005), *quoting Ying*, 37 F.3d at 285. Notably, the Seventh Circuit "has made clear that the prongs of this analysis almost always implicate questions of fact for the jury." *Id.*

Here, defendant officers fail to address the merits of plaintiff's failure to intervene claim, instead arguing that there cannot be a failure to intervene claim because "there was not a constitutional violation." (Dckt. #24 at 13). As explained above, because the Court has found it

17

inappropriate to dismiss plaintiff's excessive force claim, it also declines to dismiss plaintiff's failure to intervene claim.

## CONCLUSION

For the reasons set forth above, the Court denies the Officers' motion to dismiss, (Dckt. #24). Defendant Officers shall answer or otherwise plead to plaintiff's excessive force and failure to intervene claims as pled in Counts II and V of the complaint on or before January 24, 2024.

**DATE: January 3, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**